# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL A. LONIGRO, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LOCAL 25, TEAMSTERS UNION, )<br>)<br>Defendant. )<br>) | Civil Action No.<br>18-10990-FDS |

### ORDER ON PLAINTIFF'S MOTION FOR A COURT ORDER AND DEFENDANT'S MOTION TO DISMISS

SAYLOR, J.

Plaintiff Michael A. Lonigro, proceeding *pro se*, filed this claim against defendant Local 25 of the Teamsters Union alleging that John Murphy, a union official, failed to help him return to work for the 750 additional hours he needed to receive his pension. Defendant has filed a motion to dismiss the claim as barred by the applicable statute of limitations. Because plaintiff did not bring his claim within the limitations period, the action will be dismissed.

## I. Background

Because plaintiff is proceeding *pro se*, the Court will construe his pleadings liberally. The following facts are taken both from plaintiff's complaint and his motion for a court order.

### A. Factual Background

Lonigro alleges that he has been a member of the Local 25 of the Teamsters Union in Boston since 1986 and an employee of UPS Cartage. (Pl. Mot. for Ct. Order at 1). He alleges that in 1996, he began to be harassed by "a sophisticated group of people" he calls "white collar criminals." (*Id.*). He alleges that he stopped working in 1998 for about a year because of union

corruption in his workplace, and that the white-collar criminals had something to do with it. (*Id.*). He alleges that they continued to harass him and attempted to extort money from him, and, as a result, he moved to Arizona in 2005, and commuted to work by airplane. (*Id.*).

At some point, Lonigro stopped working and was placed on extended non-pay medical leave. (Compl. at 4). He alleges that a union official told him that he needed to work an additional 750 hours to receive his pension. (Pl. Mot. for a Ct. Order at 2). Accordingly, he requested permission from UPS Cartage to return to work, and he alleges that he received that permission from a UPS Cartage terminal manager on May 20, 2015. (Compl. at 4). He alleges that he was at the airport and about to board the plane to return to Boston when he received a call from a manager at UPS Cartage that they had changed their mind. (Compl. at 4; Pl. Mot. for a Ct. Order at 1).

Lonigro then called John Murphy, an official with the Local 25 of the Teamsters Union, presumably to file a grievance, but he did not answer because his office was closed. (Compl. at 4). The next week, Lonigro flew to Boston and went to the union office to see Murphy's secretary. (*Id.*). He alleges that Murphy "wasn't very helpful, didn't do his job properly, he has a statutory obligation as a union official." (*Id.*). Lonigro further alleges that "[t]he union official didn[']t want to really help, playing phone tag, dissapting [sic] time." (Pl. Mot. for a Ct. Order at 2).

Lonigro further alleges that he was receiving social security disability benefits, but that in order to get his disability pension, he needs 18 months of work hours preceding his disability date of August 24, 2014. (Compl. at 4). He proposes to "pay for 18 months of hours" which "comes out to be about 14,000 dollars." (*Id.*).

**B.**     **Procedural Background**

Lonigro filed the complaint in this action on May 16, 2018. The complaint alleges that

"[t]he union breech [sic] its duty of fair representation, under a labor bargaining agreement, which constituted an unfair labor practice, than acting in bad faith, violating labor laws 301-LMRA 29 U.S.C. 185 and U.S.C. 29 section 158b." (Pl. Mot. for a Ct. Order at 2). It further alleges that "[b]ecause he breeched [sic] the duty of fair representation under a labor bargaining agreement and acted in bad faith, and had a [sic] statutory obligation to do his duty, it caused me the infliction of emotional distress and because of this negligence, im having trouble trying to get my pension." (*Id.*).

Defendant was served on June 6, 2018. That same day, plaintiff filed a motion seeking "a Court Order that Michael A Lonigro is going to pay for 18 months of hours, directly to the N.E. Teamsters Pension Fund, estimated to cost about 14,000 dollars, so he can receive his disability pension. His onset date for social security disability is Aug, 24 2014, the 18 months of hours need to be paid preceeding this onset date of Aug, 24, 2014,from my understanding this could be done, with a COURT ORDER, or at worse 750 hours need to paid this year, 2018, for a regular pension." (Pl. Mot. for a Ct. Order at 2).

Defendant filed a motion to dismiss on June 12, 2018.

## II. <u>Standard of Review</u>

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give . . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### III. <u>Analysis</u>

Plaintiff alleges that defendant breached its duty of fair representation, which requires a bargaining agent to represent all of the employees fairly, impartially, and in good faith, both in the collective bargaining process and the enforcement of the resulting collective bargaining agreement. *See Vaca v. Sipes*, 386 U.S. 171, 177 (1967). Plaintiff cites the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(b), and § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

The limitations period under the NLRA for breach of the duty of fair representation is six months. 29 U.S.C. § 160(b); *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 155 (1983). It begins to run when the plaintiff knows, or reasonably should have known, of the acts constituting the union's wrongdoing. *Arriga-Zayas v. Int'l Ladies' Garment Workers' Union*, 835 F.2d 11, 13 (1st Cir. 1987). Although there is no explicit limitations period in § 301 of the LMRA, the Supreme Court has applied the six-month limitations period for unfair labor practice suits under the NLRA to unfair representation claims under § 301. *DelCostello*, 462 U.S. at 172.

Here, plaintiff complains about the behavior of a union official that allegedly occurred in May 2015. He filed this action three years later, in May 2018. Therefore, his claim for breach of the duty of fair representation under the NLRA and § 301 of the LMRA is untimely and must be dismissed.

To the extent plaintiff is alleging any claims against John Murphy as an individual, those claims must be dismissed because "'union agents' are not personally liable to third parties for acts performed on the union's behalf in the collective bargaining process." *Montplaisir v. Leighton*, 875 F.2d 1, 4, (1st Cir. 1989); *see also Conley v. Gibson*, 355 U.S. 41, 46 (1957) (explaining that the collective bargaining process does not end with the reaching of a formal agreement, but includes "day to day adjustments in the contract and other working rules, resolution of new problems not covered by existing agreements and the protection of employee rights already secured by contract").

To the extent plaintiff seeks to state separate claims for negligence and intentional or negligent infliction of emotional distress based on the union official's conduct, such claims are preempted. Federal law preempts state-law claims by members against unions for actions even "arguably" protected by §§ 7 or 8 of the NLRA, 29 U.S.C. §§ 157, 158. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244 (1959); *Goulet v. Carpenters Dist. Council of Boston & Vicinity*, 884 F. Supp. 17, 21 (D. Mass. 1994). And state claims are preempted by § 301 of the LMRA when they require the interpretation of a collective bargaining agreement or where the conduct complained of is taken "pursuant to" a collective bargaining agreement. *United States Workers of Am. v. Rawson*, 495 U.S. 362 (1990); *Filbotte v. Pa. Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997); *see also Miller v. U.S. Postal Serv.*¸ 985 F.2d 9, 11-12 (1st Cir. 1993) (explaining that mere negligence is not a breach of the collective bargaining agreement); *Cullen v. Henry Haywood Memorial Hosp.*, 95 F. Supp. 3d 130, at135-136 (D. Mass. 2015) (analyzing emotional distress claim against employer). Plaintiff's state-law claims here are expressly predicated on behavior that he contends constitutes a breach of the union official's federal duty of fair representation. Such claims are preempted and must be dismissed.

## IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss is GRANTED. Plaintiff's motion for a court order is DENIED as moot.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor, IV
Dated: June 25, 2018
United States District Judge